IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ATLAS BREW WORKS, LLC, | Case: 1:19-cv-00079 |
| | Assigned To : Cooper, Christopher R. |
| Plaintiff, | Assign. Date : 1/15/2019 |
| | Description: TRO/PI (D-DECK) |
| v. | |
| MATTHEW G. WHITAKER, in his official capacity as Acting Attorney General of the United States, | |
| Defendant. | |

MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65 and LCvR 65.1, Plaintiff Atlas Brew Works, LLC hereby moves the Court to issue a Temporary Restraining Order enjoining Defendant Matthew G. Whitaker, the Acting Attorney General of the United States, from enforcing 27 U.S.C. § 207 against Atlas Brew Works, LLC for the bottling, distributing, displaying, or advertising of kegs of its product, THE PRECIOUS ONE, without a Certificate Of Label Approval. Atlas Brew Works further moves the Court to issue a preliminary injunction enjoining Defendant from enforcing 27 U.S.C. § 207 against the bottling, distributing, displaying, or advertising of beer without a Certificate Of Label Approval.

As set forth in the declaration of plaintiff's counsel, actual notice of the time of this application, and copies of all pleadings and papers filed in the action to date or to be presented to the Court at the hearing, have been furnished to the adverse party pursuant to LCvR 65.1.

In support of this motion, plaintiff relies upon the attached memorandum of points and authorities, the declaration of Justin Cox, the exhibits, the complaint, and any other argument or material that the Court may receive.

Plaintiff requests that the Court schedule a hearing on the application for a temporary restraining order at the earliest possible date accommodating the schedules of the Court and counsel for both parties. Proposed Orders are attached.

Dated: January 15, 2019                     Respectfully submitted,

                                            Alan Gura (D.C. Bar No. 453449)
                                            Gura PLLC
                                            916 Prince Street, Suite 107
                                            Alexandria, VA 22314
                                            703.835.9085/Fax 703.997.7665

                                   By:      _____
                                            Alan Gura

                                            Attorney for Plaintiff Atlas Brew Works LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ATLAS BREW WORKS, LLC,

    Plaintiff,

    v.

MATTHEW G. WHITAKER, in his official
capacity as Acting Attorney General of the
United States,

    Defendant.

Case: 1:19−cv−00079
Assigned To : Cooper, Christopher R.
Assign. Date : 1/15/2019
Description: TRO/PI (D−DECK)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff Atlas Brew Works LLC submits the following memorandum of points and

authorities in support of its motion for temporary restraining order and preliminary injunction.

Dated: January 15, 2019        Respectfully submitted,

        Alan Gura (D.C. Bar No. 453449)
        Gura PLLC
        916 Prince Street, Suite 107
        Alexandria, VA 22314
        703.835.9085/Fax 703.997.7665

By: _____
        Alan Gura

        Attorney for Plaintiff Atlas Brew Works LLC

TABLE OF CONTENTS

Table of Authorities............................................................... ii

Introduction...................................................................... 1

Statement of Facts................................................................ 2

    *Atlas Brew Works*............................................................ 2

    *The Prior Restraint on Beer Label Speech*................................... 2

    *The Prohibition of Atlas Brew Works's Labels*.............................. 5

Summary of Argument.............................................................. 7

Argument......................................................................... 7

    I.    Atlas Will Likely Succeed on the Merits.................................. 7

         A.    The First Amendment Protects Atlas's Right to Publish Its Beer Labels. . . . 7

         B.    The Government Cannot Flatly Prohibit Atlas's Beer Labels.............. 8

               1.    The Federal Government Lacks a Substantial Interest
                    in Prohibiting Atlas's Beer Labels............................ 9

               2.    The Beer Label Prohibition Is Not Narrowly Tailored.......... 12

         C.    The Prohibition of Atlas's Beer Labels Fails as an Indefinite,
             Content-Based Prior Restraint on First Amendment Speech............. 13

    II.    The Violation of First Amendment Rights in Atlas's Beer Labels
         Inflicts Irreparable Harm. .............................................. 15

    III.    The Equities Balance In Favor of Atlas and Its Customers.................... 16

    IV.    Enforcing the Constitution Is in the Public Interest......................... 16

    V.    No Bond or Other Security Is Required as a Condition of Injunctive Relief. ..... 16

Conclusion....................................................................... 17

TABLE OF AUTHORITIES

Cases

*Aamer* v. *Obama*,
    742 F.3d 1023 (D.C. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Art-Metal USA, Inc.* v. *Solomon*,
    473 F. Supp. 1 (D.D.C. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bad Frog Brewery, Inc.* v. *New York State Liquor Authority*,
    134 F.3d 87 (2d Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Bates* v. *State Bar of Ariz.*,
    433 U.S. 350 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

*Boardley* v. *United States DOI*,
    615 F.3d 508 (D.C. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Butler* v. *Michigan*,
    352 U.S. 380 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Central Hudson Gas & Electric Corp.* v. *Public Service Commission*,
    447 U.S. 557 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Desert Outdoor Advertising* v. *City of Moreno Valley*,
    103 F.3d 814 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Disc. Tobacco City & Lottery, Inc.* v. *United States*,
    674 F.3d 509 (6th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Doctor's Assocs.* v. *Stuart*,
    85 F.3d 975 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Edenfield* v. *Fane*,
    507 U.S. 761 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Federal Prescription Serv.* v. *American Pharmaceutical Ass'n*,
    636 F.2d 755 (D.C. Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Flying Dog Brewery, LLLP* v. *Mich. Liquor Control Comm'n*,
    597 Fed. Appx. 342 (6th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Freedman* v. *Maryland*,
    380 U.S. 51 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ii

*FW/PBS, Inc.* v. *Dallas*,
    493 U.S. 215 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gordon* v. *Holder*,
    721 F.3d 638 (D.C. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Greater New Orleans Broad. Ass'n* v. *United States*,
    527 U.S. 173 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Handsome Brook Farm, LLC* v. *Humane Farm Animal Care, Inc.*,
    700 Fed. Appx. 251 (4th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hoechst Diafoil Co.* v. *Nan Ya Plastics Corp.*,
    174 F.3d 411 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hornell Brewing Co.* v. *Brady*,
    819 F. Supp. 1227 (E.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Search of Kitty's East*,
    905 F.2d 1367 (10th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Leonard* v. *United States DOD*,
    38 F. Supp. 3d 99 (D.D.C. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Linmark Associates, Inc.* v. *Willingboro*,
    431 U.S. 85 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lorillard Tobacco Co.* v. *Reilly*,
    533 U.S. 525 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Nutritional Health Alliance* v. *Shalala*,
    144 F.3d 220 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pearson* v. *Shalala*,
    164 F.3d 650 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pursuing America's Greatness* v. *FEC*,
    831 F.3d 500 (D.C. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Rubin* v. *Coors Brewing Co.*,
    514 U.S. 476 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Sable Commc's of Cal., Inc.* v. *FCC*,
    492 U.S. 115 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

iii

*Schrader* v. *Holder,*
    704 F.3d 980 (D.C. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Singh* v. *Carter,*
    168 F. Supp. 3d 216 (D.D.C. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*SpeechNow.org* v. *FEC,*
    599 F.3d 686 (D.C. Cir. 2010) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States* v. *Philip Morris USA Inc.,*
    855 F.3d 321 (D.C. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States* v. *Virginia,*
    518 U.S. 515 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Va. State Bd. of Pharmacy* v. *Va. Citizens Consumer Council,*
    425 U.S. 748 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

**Constitutional Provisions**

U.S. Const. amend. XXI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

U.S. Const. art. I, § 9, cl. 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Statues and Rules**

18 U.S.C. § 925(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

27 C.F.R. Part 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

27 C.F.R. § 7.41(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 13

27 U.S.C. § 201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

27 U.S.C. § 205(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 6, 13

27 U.S.C. § 207. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 13

Fed. R. Civ. P. 65(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Other Authorities

Ruth Simon, *Where Did All the Craft Beer Go? Government Shutdown
    Closes Tap on New Brews*, Wall Street Journal, Jan. 11, 2019 ...................... 4

Tim Mak, *Meet the Beer Bottle Dictator*, The Daily Beast, Aug. 12, 2014,
    available at https://www.thedailybeast.com/meet-the-beer-bottle-dictator
    (last visited Jan. 12, 2019). ..................................................... 4

TTB Ruling 2013-1 (Mar. 27, 2013),
    available at https://www.ttb.gov rulings/2013-1.pdf. ............................. 3

U.S. Dept. Of Agriculture, *Opportunity is Brewing with USDA Grant Program*,
    May 1, 2014, available at https://www.usda.gov/media/blog/2014/05/01/
    opportunity-brewing- usda-grant-program (last visited Jan. 13, 2019).................. 11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

INTRODUCTION

Americans' fundamental right to free speech requires no Congressional authorization. The

government can shut down speech regulators. It cannot shut down the First Amendment. The lack of

political will to operate what might be a valid restriction on protected speech is the government's

problem, not a speaker's. The Framers would have recoiled at the notion that anyone would fear

criminal prosecution for speaking, merely because Congress has not enacted a bill funding the

operation of a content-based prior restraint on their speech.

Yet such is the predicament facing Washington, D.C.'s Atlas Brew Works. Atlas, a

neighborhood production craft brewer, sits on forty barrels of THE PRECIOUS ONE—a perishable,

seasonal apricot-infused India pale ale that Atlas cannot label for interstate shipment. The federal

government stands ready to prosecute Atlas should it ship THE PRECIOUS ONE, because it has not

approved the content of that beer's keg label. On the other hand, for lack of Congressional

appropriation, the government cannot review Atlas's application for label approval. And this is not

Atlas's only label pending approval. Atlas must be able to continue publishing new labels to remain

in business. As the government would have it, however, prosecuting Atlas for speaking without a

license is "essential." The processing of Atlas's request for permission to speak, not so much.

The situation is unacceptable. This Court may be unable to solve the political branches'

budgetary standoff, but it remains in the business of securing fundamental rights. The bottom line is

that Atlas suffers a categorical prohibition of its constitutionally-protected speech, as well as an

indefinite content-based prior restraint on that speech. The Court should immediately enjoin the

government from requiring that Atlas obtain a legally-unavailable license to exercise fundamental

First Amendment speech rights.

### STATEMENT OF FACTS

#### *Atlas Brew Works*

From its solar-powered brewery in Northeast Washington's Ivy City neighborhood, Atlas

Brew Works LLC ("Atlas") ships approximately 60,000 cases of craft beer per year, to be enjoyed

in and beyond the city's borders. Like most craft brewers, Atlas brews a selection of beers typically

available year-round, such as District Common Craft Lager and Ponzi American IPA, and a

collection of seasonal beers, including NSFW Double Black IPA and Festbier German-style Lager.

Atlas's beers contain no preservatives, and are best enjoyed fresh. Atlas distributes approximately

60% of its beer in kegs, and approximately 40% of its beer in cans. Cox Decl., ¶ 2.

Speech is essential to Atlas Brew Works. Like all beverage producers, Atlas Brew Works

must label the containers of its products that it wishes to distribute. It cannot sell, and no one will

purchase, random unidentified liquids. And so, Atlas Brew Works expresses itself through the labels

it places on cans and kegs containing its beers. Its labels communicate essential information to

consumers, such as a beer's brand name, the style and type of beer, a beer's ingredients, its origin,

alcohol content, and important safety information. *Id.* ¶ 3.

Atlas's beer labels also contain other useful information, such as suggested food pairings and

Atlas's web address where individuals may read more messages from Atlas. And by its choice of

font, color, artwork, and other design elements of its beer labels, Atlas Brew Works seeks to enhance

consumers' enjoyment of its product and convey and further the Atlas brand. *Id.* ¶ 4.

#### *The Prior Restraint on Beer Label Speech*

The Federal Alcohol Administration Act, 27 U.S.C. § 201 et seq. ("the FAA Act") regulates

the content of alcoholic beverage labels shipped in interstate commerce, requiring and forbidding

various types of speech that such labels might convey. The FAA Act provides that "[i]t shall be

2

unlawful for any person engaged in business as a . . . brewer . . . [t]o sell or ship or deliver for sale or shipment, or otherwise introduce in interstate or foreign commerce . . . any . . . malt beverages in bottles, unless such products are bottled, packaged, and labeled in conformity with such regulations, to be prescribed by the Secretary of the Treasury, with respect to packaging, marking, branding, and labeling and size and fill of container . . . ." 27 U.S.C. § 205(e).

The Treasury Secretary's regulations must prohibit various false, misleading, obscene, or misleading statements, and the disparagement of competitors' products; and require the disclosure of the beer's identity and quality, the net contents of the container, and the identity of the beer's manufacturer. 27 U.S.C. § 205(e). This, they do. *See* 27 C.F.R. Part 7.

To ensure compliance with federal beer label content standards, the FAA Act subjects all beer labels to a prior restraint, known as a "COLA":

> In order to prevent the sale or shipment or other introduction of . . . malt beverages in interstate or foreign commerce, if bottled, packaged, or labeled in violation of the requirements of this subsection . . . no brewer or wholesaler of malt beverages shall bottle . . . for sale or any other commercial purpose . . . malt beverages . . . unless, upon application to the Secretary of the Treasury, he has obtained and has in his possession a certificate of label approval ["COLA"] covering the . . . malt beverages, issued by the Secretary in such manner and form as he shall by regulations prescribe: *Provided*, That any such . . . brewer or wholesaler of malt beverages shall be exempt from the requirements of this subsection if, upon application to the Secretary, he shows to the satisfaction of the Secretary that the . . . malt beverages to be bottled by the applicant are not to be sold, or offered for sale, or shipped or delivered for shipment, or otherwise introduced, in interstate or foreign commerce.

27 U.S.C. § 205(e). A Treasury regulation likewise provides that "[n]o person may bottle or pack malt beverages, or remove malt beverages from the plant where bottled or packed unless an approved certificate of label approval, TTB Form 5100.31, is issued." 27 C.F.R. § 7.41(a). But brewers need no longer seek exemptions from the label approval requirement when selling beer intrastate. *See* TTB Ruling 2013-1 (Mar. 27, 2013), available at https://www.ttb.gov/rulings/2013-1.pdf

3

The COLA requirement is administered by the Treasury Department's Alcohol and Tobacco Tax and Trade Bureau ("TTB"). In plaintiff's experience, COLA applications for beer are typically processed within three weeks, Cox Decl., ¶ 5, although TTB might claim that it "normally takes less than a week to approve new labels for beer and other malt beverages." Ruth Simon, *Where Did All the Craft Beer Go? Government Shutdown Closes Tap on New Brews*, Wall Street Journal, Jan. 11, 2019. In any event, the TTB is no rubber stamp. Under the leadership of its preceding Malt Beverage Labeling Specialist, Kent Battle Martin, the agency gained notoriety for aggressively policing the content of every beer label used in the United States.

> Battle has rejected a beer label for the King of Hearts, which had a playing card image on it, because the heart implied that the beer would have a health benefit.
>
> He rejected a beer label featuring a painting called The Conversion of Paula By Saint Jerome because its name, St. Paula's Liquid Wisdom, contained a medical claim—that the beer would grant wisdom.
>
> He rejected a beer called Pickled Santa because Santa's eyes were too "googly" on the label, and labels cannot advertise the physical effects of alcohol. (A less googly-eyed Santa was later approved.)
>
> He rejected a beer called Bad Elf because it featured an "Elf Warning," suggesting that elves not operate toy-making machinery while drinking the ale. The label was not approved on the grounds that the warning was confusing to consumers.
>
> He rejected a Danish beer label that featured a hamburger, which was turned down because the image implied there was a meat additive in the beer.

Tim Mak, *Meet the Beer Bottle Dictator*, The Daily Beast, Aug. 12, 2014, available at https://www.thedailybeast.com/meet-the-beer-bottle-dictator (last visited Jan. 12, 2019).

The Attorney General may bring an action in the relevant United States District Court "to prevent and restrain violations of" the FAA Act. Shipping beer in interstate commerce without a COLA, in violation of 27 U.S.C. § 205(e), is a misdemeanor punishable by a fine of up to $1,000 per offense, although the Treasury Secretary is authorized to settle for half. 27 U.S.C § 207.

4

*The Prohibition of Atlas Brew Works's Labels*

On January 3, 2019, Atlas began brewing the first 40 of 100 planned barrels of THE

PRECIOUS ONE, a seasonal, apricot-infused India pale ale that it intends to sell between February and

April, 2019. Of the initial 40 barrel batch of THE PRECIOUS ONE, Atlas would fill 7,200 cans and

approximately 40 kegs. It intends to retain four of these kegs for its tap room. Half the remaining

kegs will be distributed elsewhere within the District of Columbia, and the other half will be

distributed to Atlas's five out-of-state distributors in Maryland, Virginia, and Tennessee. Cox Decl.,

¶ 6.

Atlas has obtained numerous COLAs for its various cans and kegs. *Id.* ¶ 5. On November

28, 2018, Atlas applied for a COLA for cans of THE PRECIOUS ONE. On December 17, 2018, the

TTB approved this application. *Id.* ¶ 7; Exh. A.

On December 20, 2018, Atlas applied for a COLA for the label to be applied to kegs of THE

PRECIOUS ONE, and for nine other labels, five of which were approved. Cox Decl., ¶ 8; Exh. B. On

December 22, 2018, appropriations lapsed for various government agencies, including the TTB,

without the TTB having taken any action on Atlas's five pending COLA applications, including the

COLA application for THE PRECIOUS ONE keg label. Cox Decl., ¶ 9. The TTB's home page now

greets visitors with an advisory titled,

APPROPRIATIONS LAPSE NOTICE
CESSATION OF TTB OPERATIONS
WITH LIMITED ACCESS TO
www.ttb.gov

*See* https://www.ttb.gov/ (last visited Jan. 14, 2019). TTB advises that

> [COLA] submissions will not be reviewed or approved until appropriations are enacted. In
> addition, other information on this website may not be up to date, and TTB will not be able
> to respond to questions or comments submitted via the website until appropriations are
> enacted. TTB will suspend all non-excepted TTB operations, and no personnel will be

5

available to respond to any inquiries, including emails, telephone calls, facsimiles, or other communications. The website and operations will fully resume when appropriations are reenacted. TTB has directed employees NOT to report to work and they are prohibited by federal law from volunteering their services during a lapse in appropriations. Once funding has been restored and the government shutdown is over, we will work to restore regular service as soon as possible.

*Id.*

The initial 40 barrels of THE PRECIOUS ONE are ready for consumption. The beer is perishable after 120 days, and seasonal. Atlas cannot retain THE PRECIOUS ONE in its fermenting tank indefinitely, and it will need to have the tank vacated of THE PRECIOUS ONE to make room for the production of additional beer. Atlas cannot realistically sell all of THE PRECIOUS ONE intended for interstate keg delivery by other means. It can sell only so much beer in its tap room, in kegs for distribution within Washington, D.C., and in cans. In any event, Atlas intends to continue conveying its beer labels beyond the District of Columbia, so that its public in the various states may continue receiving Atlas's messages (and its beer). Cox Decl., ¶ 10.

Atlas estimates its losses from being unable to sell THE PRECIOUS ONE kegs in interstate commerce would be $5,000 for the current 40 barrel batch, and $15,000 for the total planned 100 barrel production run. These losses would multiply greatly, threatening Atlas's continued existence, as the COLA prohibition effectively shuts down further production of new beers and the rebranding of existing beers. *Id.* ¶ 11.

Atlas refrains from labeling and placing kegs of THE PRECIOUS ONE in interstate commerce because it does not have a Certificate Of Label Approval for any label that it might place on THE PRECIOUS ONE kegs, and it reasonably fears prosecution under 27 U.S.C. § 207 for violating the COLA requirement of 27 U.S.C. § 205(e) and 27 C.F.R. § 7.41(a). Atlas will refrain from publishing other new beer labels indefinitely for the same reason. *Id.* ¶ 12.

6

SUMMARY OF ARGUMENT

Atlas's predicament may present a novel dispute, but the law is clearly established: The First

Amendment protects speech in the form of beer labels. The government cannot simply prohibit beer

labels as a category of speech. The government is not required to impose a content-based prior

restraint on speech, but such licensing decisions must issue promptly and predictably.

Until and unless the government chooses to act on Atlas's pending COLA applications, Atlas

will prevail. Atlas and its customers are suffering irreparable harm in that the government violates

their First Amendment rights every moment that Atlas is not free to label its products. The equities

strongly favor Atlas, and the enforcement of fundamental speech rights is inherently in the public

interest. A temporary restraining order, and a preliminary injunction, should issue.

ARGUMENT

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed

on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3]

that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."

*Aamer* v. *Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (internal quotation marks omitted). "The

standard for a temporary restraining order is the same as that for preliminary injunction." *Singh* v.

*Carter*, 168 F. Supp. 3d 216, 223 (D.D.C. 2016) (citations omitted). All four factors weigh in

Atlas's favor.

I.     ATLAS WILL LIKELY SUCCEED ON THE MERITS.

A.     The First Amendment Protects Atlas's Right to Publish Its Beer Labels.

The First Amendment secures the right to publish beer labels. At least in part, beer labels

come within the First Amendment's protection because "information on beer labels constitutes

commercial speech." *Rubin* v. *Coors Brewing Co.*, 514 U.S. 476, 481 (1995). "The commercial

marketplace, like other spheres of our social and cultural life, provides a forum where ideas and information flourish . . . even a communication that does no more than propose a commercial transaction is entitled to the coverage of the First Amendment." *Edenfield* v. *Fane*, 507 U.S. 761, 767 (1993).

Atlas's consumers share the brewer's First Amendment interest in its beer labels. "If there is a right to advertise, there is a reciprocal right to receive the advertising . . . ." *Va. State Bd. of Pharmacy* v. *Va. Citizens Consumer Council*, 425 U.S. 748, 757 (1976) (footnote omitted). "[That] interest is substantial: the consumer's concern for the free flow of commercial speech often may be far keener than his concern for urgent political dialogue." *Bates* v. *State Bar of Ariz.*, 433 U.S. 350, 364 (1977). Doubtless many consumers would prefer using Atlas's beer labels than listening to federal budget debates. The two activities might even have a symbiotic relationship.

This is not to suggest that the government may not regulate beer labels. But as precedent condemning beer label censorship attests, such regulations must meet First Amendment standards. *See Rubin, supra,* 514 U.S. 476; *Bad Frog Brewery, Inc.* v. *New York State Liquor Authority*, 134 F.3d 87 (2d Cir. 1998); *Flying Dog Brewery, LLLP* v. *Mich. Liquor Control Comm'n*, 597 Fed. Appx. 342 (6th Cir. 2015); *Hornell Brewing Co.* v. *Brady*, 819 F. Supp. 1227 (E.D.N.Y. 1993).

At least for now and for the foreseeable future, the COLA requirement's application to Atlas's beer labels cannot survive First Amendment scrutiny.

B.     The Government Cannot Flatly Prohibit Atlas's Beer Labels.

The government currently prohibits Atlas from publishing its keg label for THE PRECIOUS ONE in interstate commerce. TTB's now-conceptual, inoperative licensing mechanism is irrelevant. Indeed, the licensing of Atlas's speech is itself a constitutional impossibility: "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law . . . ." U.S. Const. art.

I, § 9, cl. 7. When an administrative process exists by which people may obtain relief from a prohibition, but Congress has not appropriated money to fund that process, the underlying prohibition is subject to constitutional challenge. *See Schrader* v. *Holder*, 704 F.3d 980, 992 (D.C. Cir. 2013) ("[w]ithout the relief authorized by [18 U.S.C. §] 925(c), the federal firearms ban will remain vulnerable to a properly raised as-applied constitutional challenge"). As things stand, it would take an Act of Congress to authorize Atlas's speech.

"Traditionally, First Amendment questions arising in the arena of 'commercial speech' have occasioned scrutiny under the standard of *Central Hudson Gas & Electric Corp.* v. *Public Service Commission*, 447 U.S. 557 (1980)." *United States* v. *Philip Morris USA Inc.*, 855 F.3d 321, 327 (D.C. Cir. 2017) (parallel citations omitted).

> Under *Central Hudson*, protected speech may be regulated if the governmental interest is "substantial." Any such regulation must "directly advance[] the governmental interest asserted." When analyzing this requirement, the Supreme Court "has commonly required evidence of a measure's effectiveness." Finally, any regulation cannot be "more extensive than is necessary to serve that interest," a standard the government cannot satisfy "if it presents no evidence that less restrictive means would fail."

*Id.* (citations omitted).

The government's prohibition of Atlas's beer labels does not advance any government interest, let alone a "substantial" one. Even if banning Atlas's labels effectively advanced some worthy, sufficiently substantial interest, the government cannot hope to establish that the current prohibition is narrowly tailored to serve that interest.

      1.    *The Federal Government Lacks a Substantial Interest in Prohibiting Atlas's Beer Labels.*

The government cannot argue that the current state of affairs reflects considered legislative judgment to advance *any* regulatory interest. When Congress enacted the FAA Act in 1935, it apparently assumed that someone would administer it. The FAA Act's licensing guidelines, and

those found in the TTB's regulations, reflect the government's position in weighing the interests at stake. These do not prescribe a categorical prohibition, which went into effect as an unintended consequence of a political dispute wholly unrelated to beer labels. Atlas suffers from a prohibition of its protected First Amendment speech unsupported by any regulatory concerns about that speech.

This Court is not the place to invent a justification for the current ban. "[W]e must identify with care the interests the State itself asserts." *Edenfield*, 507 U.S. at 768. "Unlike rational basis review, the *Central Hudson* standard does not permit us to supplant the precise interests put forward by the State with other suppositions. Neither will we turn away if it appears that the stated interests are not the actual interests served by the restriction." *Id.* (citations omitted). Under intermediate scrutiny, the government's "justification must be genuine, not hypothesized or invented post hoc in response to litigation." *United States* v. *Virginia*, 518 U.S. 515, 533 (1996).

In the First Amendment context, as elsewhere, "something outweighs nothing every time." *SpeechNow.org* v. *FEC*, 599 F.3d 686, 695 (D.C. Cir. 2010) (en banc) (internal quotation marks and punctuation omitted). "All that matters is that the First Amendment cannot be encroached upon for naught." *Id.* The "something" of Atlas's substantial speech rights, and those of its consumers, outweigh the accidental "nothing" underlying the current prohibition. The political branches' inability to compromise on an appropriations bill does not justify the prohibition of speech.

The analysis should end here. But in the interest of caution, Atlas adds that even if the beer label prohibition were motivated by a legitimate regulatory concern, that concern would have to be attendant to some inherently unacceptable aspect of beer labels, not the negative consequences of buying beer—a lawful product. "We review with special care regulations that entirely suppress commercial speech in order to pursue a nonspeech-related policy." *Central Hudson*, 447 U.S. at 566 n.9. The government cannot "completely suppress the dissemination of concededly truthful

information about entirely lawful activity, fearful of that information's effect upon its disseminators and its recipients." *Va. Pharmacy*, 425 U.S. at 773; *see also Bates, supra*, 433 U.S. 350 (striking down prohibition on attorney advertising).

Even a "vital" government interest does not change this calculus. *Linmark Associates, Inc. v. Willingboro*, 431 U.S. 85, 94 (1977). In *Linmark*, the Supreme Court struck down a prohibition on home realty signs, enacted to stem so-called "white flight." "The Council's concern . . . was not with any commercial aspect of 'For Sale' signs - with offerors communicating offers to offerees - but with the substance of the information communicated to Willingboro citizens." *Id.* at 96. "For Sale" signs were truthful, concerned lawful activity, and held value to people, even if they encouraged behavior the government had an interest in preventing. They could not be banned.

It is especially difficult to see how the federal government retains an interest in reducing beer consumption, or how such an interest is materially advanced by prohibiting new beer labels. The question of prohibition is now left to the states, *see* U.S. Const. amend. XXI, and the federal government today benefits greatly from taxing beer, the production of which it supports in various ways. *See, e.g.*, U.S. Dept. Of Agriculture, *Opportunity is Brewing with USDA Grant Program*, May 1, 2014, available at https://www.usda.gov/media/blog/2014/05/01/opportunity-brewing-usda-grant-program (last visited Jan. 13, 2019). Moreover, the current label prohibition still allows for substantial beer label use in intrastate commerce, as well as continued interstate beer speech for all labels approved prior to December 22, 2018. Notwithstanding a federal interest in reducing the social ills of gambling, the Supreme Court struck down a ban on broadcast casino advertising, citing the government's ambivalent role with respect to gambling and the prohibition's inconsistent reach. *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173 (1999). The same logic would control here.

2.     *The Beer Label Prohibition Is Not Narrowly Tailored.*

The requirement that a speech restriction must not be "more extensive than necessary to serve the interests that support it" forces the government to "demonstrate narrow tailoring of the challenged regulation to the asserted interest—a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served." *New Orleans*, 527 U.S. at 188 (internal quotation marks omitted). The government must "carefully calculate the costs and benefits associated with the burden on speech imposed by [commercial speech] regulations." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 561 (2001) (internal quotation marks omitted).

Whatever the government's concerns with beer labels, those concerns led it to regulate, not to prohibit. No "careful calculation" supports the current prohibition on the publication of Atlas's beer labels in interstate commerce. *Lorillard* is instructive. In that case, the Supreme Court accepted that the government has a substantial interest in preventing underage tobacco use, "but it is no less true that the sale and use of tobacco products by adults is a legal activity." *Lorillard*, 533 U.S. at 564. In considering the constitutionality of restrictions on outdoor tobacco advertising, the Court offered, "[w]e must consider that tobacco retailers and manufacturers have an interest in conveying truthful information about their products to adults, and adults have a corresponding interest in receiving truthful information about tobacco products." *Id.* The state lost. "The breadth and scope of the regulations, and the process by which the Attorney General adopted the regulations, do not demonstrate a careful calculation of the speech interests involved." *Id.* at 562.

Even if government were permitted to conjure an interest in support of the present prohibition on beer label speech, that prohibition would only be "another case of 'burn[ing] the house to roast the pig.'" *Sable Commc's of Cal., Inc. v. FCC*, 492 U.S. 115, 131(1989) (quoting

12

*Butler* v. *Michigan*, 352 U.S. 380, 383 (1957)). "[A] speech regulation cannot unduly impinge on the speaker's ability to propose a commercial transaction and the adult listener's opportunity to obtain information about products." *Lorillard*, 533 U.S. at 565. The current prohibition bars Atlas from offering THE PRECIOUS ONE on tap outside the District of Columbia, makes it impossible for Atlas to sell any of its planned new beers, and prevents Atlas from updating the labels for existing products. Regardless of the government's supposed regulatory interest, this prohibition goes too far.

C.     The Prohibition of Atlas's Beer Labels Fails as an Indefinite, Content-Based Prior Restraint on First Amendment Speech.

The COLA requirement is not a content-neutral regulation of time, place, or manner. It does not regulate access to any particular forum. By their terms, 27 U.S.C. § 205(e) and 27 C.F.R. § 7.41(a) impose a content-based prior restraint on speech. Unless and until the TTB approves a beer label's content, its publication in interstate commerce is a misdemeanor under 27 U.S.C. § 207.

While "prior restraints are not unconstitutional *per se* . . . any system of prior restraint . . . comes to this Court bearing a heavy presumption against its constitutional validity." *FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215, 225 (1990) (plurality) (internal quotation marks omitted). "Our cases addressing prior restraints have identified two evils that will not be tolerated in such schemes." *Id.* The first "evil," relating to unbridled licensing discretion, is not here at issue.

But the second "evil" is insurmountable: "[A] prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible." *Id.* at 226 (citations omitted). Where speech is subject to a content-based prior restraint, "licensing schemes must contain a 'specified brief period' for officials to decide whether or not to issue a permit." *Boardley* v. *United States DOI*, 615 F.3d 508, 518 (D.C. Cir. 2010) (quoting *Freedman* v. *Maryland*, 380 U.S. 51, 59 (1965)).

13

*Central Hudson* left open the question of whether traditional prior restraint doctrine applies

to commercial speech, suggesting in dicta that it "may not apply." *Central Hudson*, 447 U.S. at 571

n.13. The D.C. Circuit has held the question open as well, *Pearson* v. *Shalala*, 164 F.3d 650, 660

(D.C. Cir. 1999), but courts tend to apply the prior restraint doctrine to commercial speech. "[T]he

prior restraint doctrine does play a role in evaluating the regulation of commercial speech."

*Nutritional Health Alliance* v. *Shalala*, 144 F.3d 220, 227 (2d Cir. 1998); *Desert Outdoor*

*Advertising* v. *City of Moreno Valley*, 103 F.3d 814, 818-19 (9th Cir. 1996) (striking down prior

restraint on commercial billboards); *In re Search of Kitty's East*, 905 F.2d 1367, 1371 (10th Cir.

1990); *but see Disc. Tobacco City & Lottery, Inc.* v. *United States*, 674 F.3d 509, 532-33 (6th Cir.

2012). The Fourth Circuit recently upheld a prior restraint on commercial speech not because the

speech was commercial in nature, but because it was "likely false or misleading." *Handsome Brook*

*Farm, LLC* v. *Humane Farm Animal Care, Inc.*, 700 Fed. Appx. 251, 264 (4th Cir. 2017).

The government cannot require Atlas to obtain a license in order to speak—a license

aggressively reviewed for content under rules mandating some statements and forbidding others, as

interpreted by the licensing authority—and then shutter the licensing office indefinitely. No one

knows when the TTB will reopen. That question that can only be answered by reference to the

stubbornness of the President and Congressional leaders in sticking to their respective positions

regarding the construction of a wall on the Mexican border. The delay is not "specified," nor has it

been "brief." If TTB opens tomorrow, Atlas would still have to wait perhaps *another* three weeks

for a decision—or more, considering what would be TTB's substantial backlog. The commercial

aspects of Atlas's speech should make no difference in the analysis. "Although the interests of the

commercial speech at issue here may not equate with those of political speech, we agree that the

14

special protections of the First Amendment justified the exercise of equitable jurisdiction in this case." *Kitty's East*, 905 F.2d at 1371 (footnote omitted). The Court cannot force the TTB to review Atlas's label, but it should lift the prior restraint.

II.     THE VIOLATION OF FIRST AMENDMENT RIGHTS IN ATLAS'S BEER LABEL
        INFLICTS IRREPARABLE HARM.

Without question, Atlas's First Amendment rights and the rights of its public in THE PRECIOUS ONE's keg label and other pending labels have been violated since December 22, 2018—nearly a month as of this writing. And since December 22, 2018, every new beer label produced by Atlas would be, ab initio, prohibited from publication in interstate commerce. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Pursuing America's Greatness* v. *FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (internal quotation marks omitted).

Moreover, Atlas stands to suffer significant financial harm if it cannot label THE PRECIOUS ONE kegs for delivery outside the District, to say nothing of Atlas's severe harm in being unable to publish any new beer labels at all. Atlas cannot function indefinitely without new beer labels for its evolving product line, and updated branding for its continuing products. "The destruction of a business is irreparable harm sufficient to warrant the granting of interim relief." *Art-Metal USA, Inc.* v. *Solomon*, 473 F. Supp. 1, 4 n.4 (D.D.C. 1978) (citation omitted).

Moreover, all of Atlas's economic injuries, regardless of magnitude, would appear to be irreparable. "[T]he United States has not waived sovereign immunity for monetary relief for unconstitutional acts taken by government employees acting in their official capacities." *Leonard* v. *United States DOD*, 38 F. Supp. 3d 99, 104 n.2 (D.D.C. 2014) (citation omitted) (no financial

recovery for loss of First Amendment Free Exercise rights during government shutdown), *aff'd*, 598 Fed. Appx. 9 (D.C. Cir. 2015).

III.    THE EQUITIES BALANCE IN FAVOR OF ATLAS AND ITS CUSTOMERS.

While Atlas and its customers are suffering a serious violation of their First Amendment rights, and Atlas stands to sustain a significant, irremediable financial loss, the government would not be harmed should Atlas be allowed to publish its labels beyond Washington's city limits. THE PRECIOUS ONE label is a typical example. It contains no false information, nor is it misleading; it relates to a lawful product; it complies, on its face, with the Title 27's various requirements; and it is already lawful to publish within the Nation's capital. The beer that this label would adorn, like all Atlas beers, is a perfectly fine product legal for sale throughout the United States, albeit it in government-approved cans. Moreover, the government's harm, if any, is self-inflicted. If its branches would only agree, the speech-licensing function can be resumed at any time.

IV.    ENFORCING THE CONSTITUTION IS IN THE PUBLIC INTEREST.

It is "obvious" that "enforcement of an unconstitutional law is always contrary to the public interest." *Gordon* v. *Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) (citations omitted). "[I]t may be assumed that the Constitution is the ultimate expression of the public interest." *Id.* (internal quotation marks omitted).

V.    NO BOND OR OTHER SECURITY IS REQUIRED AS A CONDITION OF INJUNCTIVE RELIEF.

Although Fed. R. Civ. P. 65(c) requires that a bond or other security be provided as a condition of issuing preliminary injunctions, this requirement may be dispensed with when there is no risk of financial harm. *Federal Prescription Serv.* v. *American Pharmaceutical Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980); *Doctor's Assocs.* v. *Stuart*, 85 F.3d 975, 985 (2d Cir. 1996). Even

16

courts that view Rule 65(c) as mandatory are open to the idea of the bond being set at zero. *See*

*Hoechst Diafoil Co.* v. *Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999).

Given the nature of this case, the Court should dispense with the bond requirement.

CONCLUSION

The motions for a temporary restraining order and for a preliminary injunction should be

granted.

Dated: January 15, 2019          Respectfully submitted,

Alan Gura (D.C. Bar No. 453449)
Gura PLLC
916 Prince Street, Suite 107
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

By: _____
Alan Gura

Attorney for Plaintiff Atlas Brew Works LLC

17